**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PATRICIA CONNER and ALBERT
MAGILL, as Personal Representatives
of the ESTATE OF DARREN MAGILL,

        Plaintiffs,

vs.                                                        Case No. 3:08-cv-332-J-32TEM

THOMAS L. SEAGRAVES, JR., in his
official capacity as Sheriff of Nassau
County, Florida; NASSAU COUNTY, a
political subdivision of the State of Florida;
WANDA JEAN O'QUINN, individually;
WALTER FITZPATRICK, individually;
and QUENTIN STEWART, individually,

        Defendants.

---

## ORDER[1]

This is a civil rights action brought by the representatives of the estate of Darren Magill, who died while he was a pre-trial detainee in the Nassau County, Florida, Jail. Before the Court is the Dispositive Motion Of Defendant Walter Fitzpatrick To Dismiss Second Amended Complaint (Doc. 29) and plaintiffs' response. (Doc.34.)

**I.    Allegations Of The Complaint**

In their second amended complaint, plaintiffs allege that the deceased, Mr. Magill, appeared on October 3, 2006 in county court on an outstanding capias for missing an earlier

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

court date. "At the time of Mr. Magilll's appearance, Mr. Magill had to be escorted from his vehicle to the courtroom with the assistance of bailiffs . . . as he was unable to ambulate by himself." (Doc. 27 at 3 (2d Am. Compl. ¶¶ 10, 11).) Mr. Magill's mother requested the judge give Mr. Magill a "drug test" because of "concerns that her son may have been under the influence of a controlled substance or substances at the time of his appearance." (Id. ¶ 12.) Mr. Magill was taken into custody and the county judge "ordered a breathalyzer and urinalysis test to be administered to Mr. Magill at the Nassau County Jail." (Id. ¶ 14.) A breathalyzer test administered at the jail at 11:00 a.m. revealed no alcohol on Mr. Magill's breath. (Id. ¶¶ 15, 16.) "Correctional officers attempted to obtain a urine sample from Mr. Magill but were unable to so. At one point Mr. Magill dropped the cup of urine into the toilet." (Id. ¶ 17.) At 2:30 p.m., correctional officers escorted Mr. Magill to the "[medical] office in the jail"; the correctional officers "had to hold Mr. Magill up as they were transporting him to keep him from falling down." (Id. ¶ 18.)

Defendant Walter Fitzpatrick ("Fitzpatrick") is a licensed practical nurse (LPN) working in the Nassau County Jail. (Id. ¶ 8.)

> 19. Upon being presented to Defendant Fitzpatrick in such visibly deteriorated physical condition, Mr. Magill was then catheterized by Defendant Fitzpatrick and two separate urinalyses were conducted.
>
> 20. Upon information and belief, Defendant Fitzpatrick had knowledge of the court order requiring a urinalysis test of Mr. Magill.

(Id. ¶¶ 19, 20.) Defendant Wanda Jean O'Quinn, also a LPN working at the Nassau County Jail, performed two urinalyses, "which she interpreted as positive for methamphetamines,

2

PCP, THC and other controlled substances" as well as cocaine.  (Id. ¶¶ 7, 21.)

> 22. Upon information and belief, defendant Fitzpatrick was present and had knowledge of the results of both urinalyses.

(Id. ¶ 22.)

At 2:35 p.m., "after the urinalysis, and without his vital signs ever having been taken, Mr. Magill was placed back into a holding cell," and defendant O'Quinn advised corrections officers that Mr. Magill need not go to the hospital. (Id. ¶¶ 23, 24.) At 4:45 p.m., "Mr. Magill was found dead in his holding cell." (Id. ¶ 28.) An autopsy revealed the presence of methadone, alprazolam and cocaine in Mr. Magill's system, and the medical examiner concluded the cause of death was drug intoxication. (Id. ¶¶ 29, 30.)

In Count I of their second amended complaint, brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that Fitzpatrick, along with defendants O'Quinn and Quentin Stewart, detention deputy and supervisor at the Nassau County Jail, violated Mr. Magill's due process rights under the fourteenth amendment of the Constitution by "fail[ing] to provide necessary medical care to Mr. Magill." (Id. ¶ 32.) Plaintiffs allege that defendants, including Fitzpatrick, "acted with deliberate indifference towards Mr. Magill's serious medical needs by failing to provide necessary medical care, despite actual knowledge of Mr. Magill's serious medical conditions and needs," and that defendants' "actions and/or omissions were done with malice and/or reckless indifference to Mr. Magill's" constitutional rights. (Id. ¶¶ 33, 35.)

The Court previously granted Fitzpatrick's motion to dismiss (with leave to amend) the original complaint in this action finding that it "contain[ed] insufficient factual allegations concerning the specific role of defendant Fitzpatrick in the alleged Fourteenth Amendment

3

violation and how defendant Fitzpatrick was deliberately indifferent to the serious medical needs of plaintiff." (Doc. 25.)

Plaintiffs' only additions to the original complaint are allegations that Mr. Magill was presented to Fitzpatrick in a "visibly deteriorated physical condition," and that, upon information and belief, Fitzpatrick had knowledge of the court order requiring a urinalysis of Mr. Magill, and of the results of both urinalyses. (2d Am. Compl. ¶¶ 19, 20, 22.)

## II.     **Legal Standard**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiffs, construing the allegations in the light most favorable to the plaintiffs. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, __, 127 S.Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S.Ct. 1955, 1964 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombley, 127 S.Ct. at 1964-1965 (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative

4

level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

**III. Discussion**

According to the second amended complaint, a visibly intoxicated Mr. Magill was in the presence of defendant Fitzpatrick, a nurse, at the jail medical office for five minutes. During this time, and in connection with the performance of a urinalysis for the purposes of drug testing, Fitzpatrick performed a catheterization on Mr. Magill. Plaintiff alleges by inference that Fitzpatrick observed Mr. Magill in a highly intoxicated condition, and alleges that Fitzpatrick had knowledge of the court order requiring a urinalysis, and knowledge of the drug-positive results of two urinalyses performed by another nurse.

**A. Constitutional Due Process Claim**

To prevail on a Fourteenth Amendment[2] claim for deliberate indifference to serious medical need, a pretrial detainee must satisfy both an objective and a subjective inquiry. First he must prove an objectively serious medical need. Second, he must prove that the government official acted with deliberate indifference to that need. Danley v. Allen, 540 F.3d

---

[2] Government officials' alleged deliberate indifference to their serious medical needs of pretrial detainees is governed by the Fourteenth Amendment due process clause. The applicable analysis is the same as that applied under the Eighth Amendment cruel and unusual punishment clause applicable to post-conviction prison inmates. Danley v. Allen, 540 F.3d 1298, 1306, 1310 (11th Cir. 2008); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); see also Burnette v. Taylor, 533 F.3d 1325, 1330 n.4 (11th Cir. 2008)("'the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner'")

1298, 1310 (11th Cir. 2008); Andujar v. Rodriguez, 486 F.3d 1199, 1203 (11th Cir. 2007), cert. denied, 128 S.Ct. 385 (2007). A prisoner asserting a claim of deliberate indifference to serious medical need must allege more than medical malpractice. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. Faison v. Rosado, 129 Fed. Appx. 490, 491-92 (11th Cir. 2005)(citing Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)).

### 1. Serious Medical Need

A medical need is serious when it "'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Danley, 540 F.3d at 1310 (citation omitted); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Alternatively, a serious medical need is established when "a delay in treating the need worsens it." Danley, 540 F.3d at 1310 ("[t]here are at least two different tests for whether a medical need is serious").

Plaintiffs allege that Mr. Magill was unable to ambulate such that he had to be physically supported; that Mr. Magill's mother was concerned that Mr. Magill was under the influence of controlled substances such that a court ordered testing; that correctional officers were unable to obtain a urine sample from Mr. Magill; that Mr. Magill was in a "visibly

6

deteriorated physical condition" such that he had to be catheterized in order to obtain a urine sample; and that two urinalyses of Mr. Magill were positive for "methamphetamines, PCP, THC and other controlled substances" and cocaine. (2d Am. Compl. ¶¶ 11, 12, 14, 17, 19, 21.) Plaintiff has pleaded sufficient facts to allege a "serious medical need" under both tests. See Danley, 540 F.3d at 1310-11.

### 2. **Deliberate Indifference**

To establish the subjective element of deliberate indifference to Mr. Magill's serious medical need, plaintiffs "'must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" Danley, 540 F.3d at 1312 (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)). A showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a § 1983 claim. A showing of intentional, conscious or callous indifference is required. Estelle, 429 U.S. at 104-106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). A prison official acts with deliberate indifference when he knows the inmate faces a substantial risk of serious harm, yet disregards it by failing to take reasonable measures or provide care. Farmer v. Brennan, 511 U.S. 825 (1994); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Mandel, 888 F.2d at 788. The standard of "deliberate indifference" may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704-705 (11th Cir. 1985). "Examples of deliberate indifference include *inter alia:* actual knowledge of a serious need for medical

care, plus failure to treat." Lindsay v. Hunter, No. 2:04-cv-460-FtM-29DNF, 2008 WL 2042515, at *5 (M.D. Fla. May 12, 2008).

Reading plaintiffs' second amended complaint in the light most favorable to them, plaintiffs allege that defendant Fitzpatrick saw Mr. Magill in a "visibly deteriorated physical condition," and had knowledge of the court order requiring a urinalysis, and of the urinalysis results evidencing that Mr. Magill was under the influence of a cocktail of controlled substances. (2d Am. Compl. ¶¶ 19, 20, 22.) Despite this, nurse Fitzpatrick failed "to provide necessary medical care, despite actual knowledge of Mr. Magill's serious medical conditions and needs." (Id. ¶ 33.) "'When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference.'" Danley, 540 F.3d at 1312 (quoting Bozeman, 422 F.3d at 1273)); see also Lancaster, 116 F.3d at 1426-28. Plaintiffs' allegation is that Fitzpatrick, a medically trained nurse with knowledge of Mr. Magill's serious medical need, ignored that need without explanation. Compare Burnette v. Taylor, 533 F.3d 1325, 1331-33 (11th Cir. 2008)(finding as a matter of law, after full factual development, that *deputies* and *jailers* were not deliberately indifferent to detainee's serious medical needs for failing to provide medical care to detainee; "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol").

### B. Qualified Immunity

Defendant Fitzpatrick contends that even if the complaint alleges a constitutional violation, he is nevertheless entitled to qualified immunity because "it cannot be said . . . that

8

the law was clearly established that the actions of Defendant Fitzpatrick, as set forth in the Second Amended Complaint, violated the Fourteenth Amendment rights of Mr. Magill." (Doc. 29 at 9.)

"'[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" McCullough v. Antolini, __ F.3d __, 2009 WL 469327, at *4 (11th Cir. Feb. 26, 2009)(quoting Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002)). The parties do not dispute that Fitzpatrick was acting within his discretionary authority as a government official at all times relevant. Accordingly, this qualified immunity inquiry involves two prongs. First, the plaintiff must show that a constitutional or statutory right has been violated. Second, a plaintiff must show that the right violated was clearly established. Fennell v. Gilstrap, __ F.3d __, 2009 WL 485187, at *3 (11th Cir. Feb. 27, 2009). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Lee, 284 F.3d at 1194.

Similar to the allegations in Danley, supra, "[t]his is a case in which general legal principles announced by [the Eleventh Circuit's] decisions in this area of law are enough to make the right violated clearly established. . . . [W]hen jailers are aware of serious medical needs they may not ignore them or provide grossly inadequate care." Danley, 540 F.3d at 1313 (allegations that pretrial detainee not permitted to properly clean himself of pepper spray in small poorly ventilated cell sufficient to state claim for jail officials' deliberate indifference to his serious medical needs; jailers were not entitled to qualified immunity on detainee's claims). Defendant Fitzpatrick's alleged inaction in this case is of the type that

9

the Eleventh Circuit has held violates the clearly established right of prisoners to timely treatment for serious medical needs. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999); Lancaster, 116 F.3d at 1425-28; Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994); Brown, 894 F.2d at 1538; Mandel, 888 F.2d at 788-89. The legal proposition "that a government official who intentionally delays providing medical care to an inmate, knowing that the inmate has a serious medical condition that could be exacerbated by delay, acts with deliberate indifference" applies in this case "'with obvious clarity to the specific conduct in question.'" Andujar v. Rodriguez, 486 F.3d at 1205 (citations omitted). The complaint alleges that defendant Fitzpatrick, a nurse, saw a visibly physically impaired Mr. Magill in the jail's medical office and, knowing that Mr. Magill had ingested and had in his system an assortment of controlled substances, failed to provide any medical assistance. Though this is a close call and the facts as developed may prove otherwise, the second amended complaint, taken as true, sufficiently alleges a violation of Mr. Magill's clearly established Fourteenth Amendment rights.[3]

Upon due consideration, it is hereby

**ORDERED**:

1. The Dispositive Motion Of Defendant Walter Fitzpatrick To Dismiss Second Amended Complaint (Doc. 29) is **DENIED**.

2. Defendant Walter Fitzpatrick shall file his answer to the second Amended

---

[3] As is typical in cases where qualified immunity is sought, the Court assumes it will be given an opportunity to revisit this issue at the summary judgment stage on a developed factual record.

Complaint no later than **April 10, 2009**.

      3.     The deadlines and settings in the Court's Case Management and Scheduling Order (Doc. 18) remain in effect.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of March, 2009.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record